JOSE AND EPIFANIA MENDEZ, PLAINTIFFS, v. CITY OF NEWARK, A MUNICIPAL CORPORATION AND MR. AND MRS. JAMES HARLEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided February 13, 1975.

*Mr. Alfred F. Brown* for plaintiffs.

*Mr. David R. Rudd* for defendant City of Newark.

*Mr. Judson L. Levin* for defendants Mr. and Mrs. James Harley.

SCHWARTZ, L., J. C. C., Temporarily Assigned. ▮ The issue to be determined by the court is whether a municipal governing body may reject the highest bid, after public sale, for the purchase of municipally-owned real property without affording to the highest bidder a hearing and without basing such rejection upon a reason which is in the public interest.

The municipal council of the City of Newark adopted a resolution providing for the public sale of premises known as 204 Johnson Avenue, not needed for public use, and fix-

ing a minimum price of $500, with the further condition that the sale would be subject to final approval by the council which, in its discretion, could reject all bids.

In accordance with the resolution the public sale was held on June 14, 1974, and plaintiffs offered the highest bid of $5,600. On July 17, 1974 the council adopted a resolution providing that the offer made for the purchase of this property "be, pursuant to *N. J. S.* 40A:12–13, rejected."

Plaintiffs filed a complaint in lieu of prerogative writs challenging the right of the governing body to reject their highest bid "giving no reason for so doing" and demanding that the conveyance be consummated.

They joined as defendants Mr. and Mrs. James Harley, the occupants of the premises. The complaint made no demand for relief against them, but at the pretrial conference it appeared that they were joined as they had made an offer to purchase the property from the council at a higher price subsequent to the date the auction was held. However, all parties agreed no testimony would be offered in this respect at the plenary trial. The Harleys are improper parties defendant in this cause of action challenging municipal conduct, and we need concern ourselves no further with their position.

At a pretrial conference, upon the court inquiring as to the nature of the testimony to be proffered and whether the municipality would be prepared to offer a reason for the rejection, the parties stipulated they would rely on the exhibits which contained the facts as to the bidding and rejection heretofore recited. The municipality asserted it rested on its absolute right to reject without a hearing, and would not offer testimony as to the reason for the rejection.

Under these circumstances the court advised it would review the exhibits and legal argument and make its determination.

*N. J. S. A.* 40A:12–13 provides that any municipality may sell real property not needed for public use by various methods, including:

(a) By public sale to the highest bidder after advertisement thereof in a newspaper circulating in the municipality or municipalities in which the lands are situated by two insertions at least once a week during 2 consecutive weeks, the last publication to be not earlier than 7 days prior to such sale. In the case of public sales, the governing body may by resolution fix a minimum price, or prices, with or without the reservation of the right, to reject all bids where the highest bid is not accepted.

In the Home Rule Act (*L.* 1917, *c.* 152), the Legislature had provided in Art. XVIII that every municipality may sell or dispose of any lands or buildings or any right or interest therein not needed for public use \* \* \* at public sale and to the highest bidder, after public advertisement.

In *L.* 1947, *c.* 417, § 1, the Legislature for the first time provided that upon the completion of the public sale, "the highest bid made thereat shall be subject to acceptance or rejection by the governing body."

In 1957 *N. J. S. A.* 40:60–26 was amended (*L.* 1957, *c.* 86, § 1) to confer upon municipalities the power to set a minimum price to be realized at the sale and at the same time to reserve the right to reject bids.

The revision of the statute, now *N. J. S. A.* 40A:12–13 (a), which became effective July 1, 1971 (*L.* 1971, *c.* 199, § 13), made no change in the authority of the governing body "to reject all bids where the highest bid is not accepted."

At issue is the nature of the authority to reject the highest bid. Is it absolute and unimpeachable or is it subject to limitations to guard against abuse of discretion?

Generally, bidding statutes have been enacted for the purpose of providing fair competitive bidding which will prevent favoritism and opportunity for fraud and corruption. *Jersey City Merchants Council v. Jersey City,* 39 *N. J.* 42 (1962); *Skakel v. North Bergen,* 37 *N. J.* 369, 378 (1962); *Samuel v. Wildwood,* 47 *N. J. Super.* 162 (Ch. Div. 1957); *Summer Cottagers' Ass'n of Cape May v. Cape May,* 34 *N. J. Super.* 67 (Law Div. 1954); *Escrow v. Haworth,* 36 *N. J. Su-*

*per.* 469 (App. Div. 1955) ; *Juice Bar Corp. v. Neptune Tp. Committee,* 36 *N. J. Super.* 164 (App. Div. 1955).

Somewhat analogous to the bidding requirements of this statute is a provision of the Local Public Contracts Law, *N. J. S. A.* 40A :11–32 :

> Nothing herein contained shall be construed as depriving any contracting agent of the right to reject a bid at any time prior to the actual award of a public work or contract where the circumstances of the prospective bidder have changed subsequent to the qualification and classification of the said bidder, which in the opinion of the awarding contracting unit would adversely affect the responsibility of the bidder.

However, as distinguished from *N. J. S. A.* 40A :12–13 (a), which does not provide any procedure for challenging the rejection of the highest bid, the public contract statute further provides :

> Before taking final action on any such bid, the contracting agent concerned shall notify said bidder and afford him an opportunity to present any additional information which might tend to sustain the existing classification.

In *Jersey City Merchants Council v. Jersey City, supra,* the Supreme Court applied to the sale of public lands the same principles of fair dealing applicable to awards of municipal contracts, in a case involving restrictions and conditions imposed by the municipality affecting the use of the lands. It is the promise of impartiality and stability, the court held, which is the inducement for bidding at such sales.

In *Lieberman v. Neptune Tp.,* 50 *N. J. Super.* 192 (App. Div. 1958), dealing with an arbitrary requirement for the filing of a deposit by potential bidders three days before the sale, the court said the statutory language does not permit municipalities to deal with real estate absolutely and without limit, as a private vendor.

Although *N. J. S. A.* 40 :48–5 contained no requirement affording a hearing to a rejected lowest responsible bidder for

a contract to render services for a municipality, the court in *Automatic Laundries, Inc. v. Bayonne Housing Authority,* 45 *N. J. Super.* 266 (Law Div. 1957), found that the lowest bidder was entitled to a hearing before his bid was rejected.

There would appear to be a more substantial reason for restraining a governing body from rejecting the highest bid in the sale of lands than rejecting the lowest bid in awarding a contract. In the latter the municipality is concerned with the quality of the performer. In the former, when the use of the property is not at issue, the legal tender is the same no matter who is the highest bidder delivering it.

The failure of the statute to provide that a hearing shall be afforded to the highest bidder before rejection, although such privilege is afforded to the lowest bidder under the public bidding statute, is not dispositive of the question of legislative intent or policy. The fundamental purpose of both bidding statutes is the same.

> [The] will of the law-giver is to be gathered from the object and nature of the subject matter, the contextual setting, and the mischief felt and the remedy in view [and the] particular terms are to be made responsive to the essential principles of the law. [*San-Lan Builders, Inc. v. Baxendale,* 28 *N. J.* 148, 155 (1958)].

Constitutional issues were not raised in the cited cases. While the Fourteenth Amendment was adopted to sustain the rights of the emancipated freemen, *Slaughter House Cases,* 16 *Wall.* 36, 21 L. Ed. 394 (U. S. Sup. Ct. 1873), its provisions, particularly its reference to "due process", have continued to form the basis for challenges to limitations of personal and property rights. (See the recent United States Supreme Court opinion holding that public school pupils are entitled to notice and adequate hearing before suspension. *Goss v. Lopez,* —— U. S. ——, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975)).

Does the denial of a hearing contravene the right of a successful bidder to due process under the United States Constitution?

In *Greene v. McElroy*, 360 *U. S.* 474, 496–497, 79 *S. Ct.* 1400, 3 *L. Ed.* 2d 1377, 1390, 1391 (1959), the court affirmed the principle that where governmental action injures an individual and the reasonableness of the action depends on fact findings, the evidence used to prove the government's case must be disclosed to the individual so that he might be permitted an opportunity to prove its untruth.

This principle received further elaboration in Justice Marshall's dissenting opinion in *Board of Regents of State College v. Roth*, 408 *U. S.* 564, 92 *S. Ct.* 2701, 33 *L. Ed.* 2d 548 (1972). He quoted from Professor Gellhorn, "Summary of Colloquy on Administrative Law," 6 *J. Soc. Pub. Teachers of Law*, 70, 73 (1961), that due process of law "is the best insurance for Government itself against those blunders which leave lasting stains on a system of justice — blunders which are likely to occur when reasons need not be given" for official action.

Present-day concepts of due process require an opportunity by one aggrieved to be heard at a "meaningful time and in a meaningful manner". *Avant Industries Ltd. v. Kelly*, 127 *N. J. Super.* 550, 553 (App. Div. 1974). In other than legislative matters due process requires adjudicative hearings by governing bodies. *Yellow Cab Corp. v. Passaic City Council*, 124 *N. J. Super.* 570 (Law Div. 1973).

The highest bidder has acquired a status to be afforded an opportunity to be heard. His rights are not "vested" as his bid did not ripen into a contract by acceptance by the governing body. His interest may be deemed as putative from the Latin *putare*, meaning "to compete". *American Heritage Dictionary of the English Language* (1971), 1063. Whatever the dimensions of his status or interest may be, it will support his claim to a hearing, not for his personal benefit but solely in order that the public interest may be served by compelling the governing body to account for its actions and to perform its public trust. As to public contract bidding, see *Trap Rock Industries, Inc. v. Kohl*, 59 *N. J.* 471 (1971);

*M. A. Stephen Const. Co. v. Rumson,* 125 *N. J. Super.* 67 (App. Div. 1973), certif den. 64 *N. J.* 315 (1973).

 A stable principle of public policy is to encourage competitive bidding. While barring a public body from rejecting bids could pave the way for corruption among bidders, the unbridled power to reject bids could afford a means of frustrating, under color of a statutory right "to reject all bids", the Legislature's intention in enacting a competitive bidding statute. Only by reviewing a hearing can it be determined if the rejection was arbitrary or if it was exercised in good faith and for some public reason. *M. A. Stephen Construction Co. v. Rumson,* 117 *N. J. Super.* 431 (App. Div. 1971).

There is nothing in the record from which the court could determine whether the action of the municipality was arbitrary or a bona fide judgment in the public interest, based upon facts to support its determination. Its cold rejection may be regarded as a reflection on the nature of power.

While counsel for the municipality did not present evidence to justify the action of his client, we shall remand the matter to the governing body with instructions that it provide a hearing for the plaintiff within thirty days from the date of this opinion.

Courts will not substitute their judgment for that of a municipal governing body in matters solely involving questions of judgment. They will not infiltrate the realm of business judgment which resides in municipal officials. It is equally clear that possible illegality or avoidance of the spirit or purpose of the laws and principles controlling governmental action cannot escape judicial scrutiny under the guise of business judgment. The absence of corrupt motive, or even the presence of good faith, does not alone preclude judicial examination or remedy. [*Ott v. West New York,* 92 *N. J. Super.* 184, 197 (Law Div. 1966)].

We shall retain jurisdiction. A transcript of the hearing, prepared at the expense of the municipality, shall be forwarded to the court, with counsel then being afforded an opportunity to present legal argument.